Daniels, J.
The application for a reargument has been made upon the ground that facts and authorities applicable to the disposition of the appeal were not accurately consid *230 ered in the opinion which has been rendered. It is asserted that the defendants were no more than agents appointed to act under the agreement which was entered into, for the other parties, and that they having received the proceeds of the enterprise, although it was unlawfully entered into, cannot now legally withhold those proceeds in whole or in part from the plaintiff in this action, who was one of the ¡Dersons it was agreed should participate in their division. But the contract which the parties entered into and which was subscribed by these defendants under their firm name of E. A. Kent & Co., does not support this position, for these defendants, together with the plaintiff, and the other two firms making and executing the agreement, were all principals in the unlawful confederation and enterprise. They subscribed the agreement as such, and it was expressly provided in it that “any profit or loss arising from said purchases and sales to be divided pro rata among the subscribers hereto.” And this was not otherwise after-wards changed than by the firm of D. & U. G. Miller and Washington Butcher’s Sons, guaranteeing the firm of E. A. Kent & Co. against all loss on 10,000 tierces each arising from their transactions, and themselves assuming such loss. As to the profits, the original agreement remained unchanged, entitling the defendants to their pro rata share or amount of the same. While, therefore, they were the persons through whose action the sales and purchases were to be made, they were still to be for the benefit and advantage of themselves, as well as the other persons, including the plaintiff, who subscribed the original contract. And whatever advantáge should be derived from the performance of that part of the agreement which obligated the other parties to withhold from the market the lard owned or controlled by themselves, these defendants were entitled to share in such advantages. By the complaint it has also been alleged that the purchase and sale of the lard was for the joint account of the parties, and that the business was to be transacted and carried on under an agreement made between these parties, and no other agreement appears to have been entered into than this unlawful agreement to withhold from the market the lard owned by three of the parties for the obvious purpose of advancing the ¡Drice expected to be received from that in which the dealings were to be carried on. This agreement modified onlj so far as to relieve Kent & Company from liability for dosses, appears to have been the basis of the dealings of these parties. If it had not been, the least that could be expected would be that a denial of that fact would have been made, but it was not, by the plaintiff in his affidavit, even though he was not bound to reply to the part of the defendant’s *231 answer presenting so much of the defense as depended upon the illegality of this contract. As the relations of these parties were in this manner presented, their object was to engage in the unlawful enterprise as principals for their joint profit, benefit and advantage. Arid that it was so understood, and intended to be a combination to withhold from the market the lard already owned by three- of the subscribers, including the plaintiff, and thereby to obtain an enhanced price for that which was to be dealt in by the parties through the manipulation of Kent & Company, is fully supported by the affidavits used upon the hearing of the motion. In that of Poole, one of the defendants, the agreement is stated to have created a pool to form a corner in lard. And it is further added that defendants “ used our best endeavors to corner the lard market which was the avowed object of said pool.” Henry C. Butcher, who was one of the subscribing firm of Butcher & Sons, stated that he “was a member of the lard pool with the plaintiff, and D. & ¡N". G. Miller, out of which arose the transactions in controversy herein.” And that “ said pool was entered into because each of the parties thereto had bought and had on hand large quantities of lard, and each desired to have the market cornered, or the price forced up, so that the same could be sold at a profit.” The statements of the defendant Kent were quite similar in their character, and so were those of Selah Young, Jr., who was connected with the business of Kent & Co., for he swore that he knew “that an agreement was formed among the plaintiff, Washington Butcher’s Sons and D. & TJ. G. Miller, to withdraw from the market about one hundred and six thousand tierces of lard which they had on hand, and to purchase about one hundred thousand tierces, in order to force up the price, or create a corner in the market. Said original agreement was in writing.” To the same effect, without being quite as precise, is the affidavit of James S. Wells; and it was upon these affidavits and the manner in which they were answered by the plaintiff, that it has been already stated that he substantially conceded the existence of this unlawful combination. He did not deny having entered into such a confederacy, but contented himself with denying other allegations contained in the opposing affidavits. His statements in this respect are that, “It is untrue that I went into the market and operated heavily against the pool, as alleged in said affidavit. * * * I am informed by Mr. Miller, and verily believe that Kent & Poole did pay him $62,500 in settlement of his share of the profits of the pool. I had a very much larger interest than Mr. Miller,” etc. * * * * “ It is also untrue that I did trade against the pool.” And if these denials do not *232 practically concede that such a pool or confederation had been entered into, as is stated to have been the fact by the other affidavits, it is difficult to perceive how that could more effectually have been done without a broad and unqualified concession expressly of the fact. The fair construction and reasonable understanding of this affidavit is that the plaintiff designed to admit by the references made, and not denying the assertions establishing the unlawful confederacy, that such a combination had in fact been entered into between these parties. And it may, with propriety, be assumed that these other statements were not only true, but intended by him to have been passed over as the truth, from the manner in which his own affidavit was made.
In support of the application for the reargument, authorities have been copiously cited, which are relied upon as supporting the plaintiff’s right to maintain this action for an accounting concerning the transactions which took place under this agreement and the recovery by him of his share of their profits. But to maintain the action, as it now appears, it will be indispensable for the plaintiff not only to prove, but to rely upon the agreement as the foundation of his claim. Neither the transactions under the agreement, nor the accounts including them, have been in any manner settled or adjusted, but it is the object of the action to obtain such a settlement and adjustment. And before the plaintiff can advance a step in securing that object, he will be obliged to prove and establish the agreement under which the business was commenced and carried on and the moneys realized from which he démands his proportion.
In this respect this case differs entirely from those which have been brought to the attention of the court as supporting this application for neither of them, with perhaps one solitary exception, and that is the case of Wann v. Kelly (5 Fed. Rep., 584), supports the plaintiff’s position. The others relate to the adjustment and determination of transactions which had proceeded beyond the performance of the unlawful agreement itself, and which could well be maintained without reference to its stipulations, or requiring their enforcement by the interference and action of the courts. And where that may be done the defendant cannot defeat the right to relief by going back to the unlawful agreement itself. Such was the case of Berkshire v. Evans (4 Leigh., 233), where the action was for money received and misappropriated by the cashier of a bank unlawfully created. It was there held, and properly so too, that he could not justify his own wrong by availing himself of this antecedent circumstance. In Kiewert v. Rindskopf (46 *233 Wis., 481), the defendant, who was connected with no unlawful transaction or contract, had received money to be paid over to, another person and had not paid it. And very much like that is the case of Merritt v. Millard (4 Keyes, 208). These, as well as all other similar cases, depend upon an entirely different principle from that which is applicable to this case, for the obligations the actions were brought to enforce were in no manner dependent upon the unlawful agreement or transactions, which were considered by the courts, but they arose upon subsequent dealings capable of being maintained without reference to the unlawful contracts or misconduct relied upon and drawn into controversy only by way of defense. The cases of Anderson v. Moncrieff (3 Desaussure Eq., 124), and Sharp v. Taylor (2 Phillip’s Chy., 801), are equally distinguishable from the present case. The object in each case was an accounting not required to be supported by proof of, or reference to, the unlawful agreement or transactions brought into the actions by the defendant. Where that may be done, there the rights of the parties have been considered as having passed beyond the taint of illegality. But such is not the nature of this controversy, for the right of the plaintiff to an accounting and recovery must depend upon the assertion, proof and maintenance of this unlawful contract. And where that is the character of the action, the case of Cook v. Sherman (20 Fed. Rep., 167), is a direct authority against the plaintiff, for it was there held that an illegal contract will not be enforced by the courts, but the parties will be left where they have voluntarily placed themselves. The criterion suggested'by the court as the proper one to follow, is the inquiry whether the plaintiff has a cause of action independently of the unlawful contract whether he can maintain his action without depending upon it or invoking its enforcement by the court. Id., 169, 110. Where that cannot be done, it is plain that the action cannot be maintained, for the courts will not aid or assist either party to an unlawful agreement by carrying it into effect against the other. This was considered also in Sykes v. Beadon (11 Ch. Div. L. R., 170), where the same principle was declared to be the law in this class of cases. And while this case was not approved in Smith v. Anderson (15 Ch. Div. L. R., 248), its soundness was not questioned so far'as it was devoted to the consideration of this subject. Neither is there anything in Heckman v. Schwartz (50 Wis., 267) in any form tending to discredit the soundness of this rule. It was likewise unquestioned in Brooks v. Martin (2 Wall., 70) and McBlair v. Gibbes (17 How. U. S., 232). In the case of Planters’ *234 Bank v. Union Bank (16 Wall., 483) the subject of the controversy had passed beyond the unlawful dealings of the parties and their rights were capable of being adjusted and carried into effect without reference to such dealings. On this subject it was said that “when the illegal transaction has been consummated, when no court has been called upon to give aid to it, when the proceeds of the sale have been mutually received, and received in that which the law recognizes as having had value, and when they have been carried to the credit of the plaintiff, the case is different. The court is there not asked to enforce an illegal contract. The plaintiffs do not require the aid of any illegal transaction to establish their case.” Id., 499-500.
These cases, as well as the others, with the possible exception already noticed, uniformly maintain the law to be that an action for property, money or proceeds remotely connected with an unlawful contract or transaction can be maintained when they are in no measure dependent upon the precedent violation of the law. But where the action is dependent upon the unlawful agreement and the transactions carried on under it, and is brought for the adjustment of the rights or obligations of the parties growing immediately out of such transactions, there it cannot be maintained, for the reason that the courts will not interpose their authority to carry into effect a violation of the law. That was directly held in Arnot v. Pittston, etc., Coal Co. (68 N. Y., 558), and as this case has been presented, it is governed by this principle, for the plaintiff will be unable to present any ground for the accounting and recovery without first proving the agreement made between the parties and the dealings which have taken place under it. Both this agreement and these dealings, as has already been held, were unlawful. The former banded these parties together in a confederation known as a conspiracy to advance the price of one of the necessary commodities of life. That the law does not permit, but it has provided punishment for such misconduct. And where that may appear to be presented as the foundation of an action, the judicial authorities are required to withhold their sanction from the proceeding. It is regarded, as it in fact is,-an innovation of authority to render a violation of the law successful as well as profitable, and that no judicial tribunal will lend itself to accomplish. But as the authorities have declared, the courts must leave the parties where it finds them without attempting to listen to their disputes or to settle their misunderstandings.
The decision which has been announced cannot be otherwise considered than as being well sustained, not only under this rule, but for the further reason that the disap *235 pearance of the books and papers of the defendants have ■ substantially disabled them from making and serving such a bill of particulars as has been required from them.
The motion should be denied, with costs.
Van Brunt, P. J., and Brady, J., concur.