ISAAC MERRITT, Respondent, v. JOHN A. MILLARD, Appellant.

ILLEGAL CONTRACT. EXECUTED AND EXECUTORY CONTRACTS.

It is competent for a party to waive the defense of the illegality of a contract in which he himself participates, and to affirm the same so far as the parties thereto are concerned. (*Pepper* v. *Haight*, 20 Barb. 429.)

Where, in pursuance of an illegal contract between A and B, A pays to C moneys for the use of B, B can maintain an action against C for the recovery of the moneys so held to his use, and the defense of C, founded upon the illegality of the agreement between A and B, is not available.

Whenever the parties have executed a contract for illegal purposes, the court will refuse to lend its aid to enable either party to disturb it.

*John H. Reynolds*, for the respondent.

THIS is an appeal by the defendant from a judgment of the Superior Court of the city of New York in favor of the plaintiff.

The action was brought to recover the sum of $500 and interest paid by one Brewster, to the defendant for the use of the plaintiff.

The answer was, first, a general denial; second, that the claim of the plaintiff grew out of an illegal agreement between the plaintiff and Jared Brewster, by which it is alleged, that, for the sum of $500, the plaintiff agreed not to bid at a foreclosure sale of certain property, in which both the plaintiff and Brewster were interested as subsequent incumbrancers; third, a pending action against Brewster for the same cause; fourth, a set-off for $300, for costs and counsel fees alleged to be due the defendant from Brewster.

The plaintiff demurred to the second, third and fourth defences set up in the answer, and the demurrer was sustained both at the Special and General Terms of the Superior Court, and no appeal has been taken from this decision. (See report of case, 5 Bosw. 645.) The case was then referred to JOHN H. WHITE, Esq., as sole referee, by whom it was heard and decided.

On the trial before the referee the plaintiff gave evidence tending to show, that on the 6th of September, 1861, certain

property in Troy was advertised to be sold on a judgment in foreclosure. The plaintiff (Merritt) held a judgment, which was the next lien to the mortgage on the one undivided half of the premises, and Jared Brewster claimed to have the next lien to the mortgage on the other undivided half. It was then agreed between the attorney for the plaintiff and Brewster, that, as near as could be ascertained, the cash value of one-half of the surplus likely to arise on the sale, was $500, and Brewster then agreed that if the plaintiff would not interfere with the sale, he would pay him $500. The plaintiff in pursuance of this agreement did not bid, and the property was purchased by Brewster. After the sale, Brewster paid to the defendant $500 for the plaintiff.

The defendant was sworn on his own behalf, and his evidence does not in any material degree conflict with that of the plaintiff, in respect to the arrangement at the sale. He made the agreement as the attorney for Brewster, and he admits that after the sale, Brewster paid him the $500 in consideration that he would pay it to Hadley, who was plaintiff's attorney.

At the close of the evidence, the defendant moved for a nonsuit, on the ground:

1. That the testimony showed that the money was not paid to defendant for plaintiff's use; and,

2. That the testimony showed that the money was paid to defendant in fulfilment of a contract made with defendant for defendant's use.

The motion was denied, and the defendant excepted.

The referee found as a fact, that on the 6th of September, 1861, Brewster paid the defendant $500 for the use of the plaintiff, and which the defendant promised to pay the plaintiff on request, and that, upon request, he has not paid the same, and the report states "that the *reasons* of my finding are more fully set forth in my *opinion* hereto annexed."

Judgment was thereupon ordered for the plaintiff for $500, with interest and costs, and from this judgment the present appeal is taken.

I. Upon the facts found by the referee, it is plain that the
VOL. IV. 27

judgment for the plaintiff was right. The plaintiff could maintain the action even if he did not know that the money had been paid to the defendant for his use. (*Lawrence* v. *Fox*, 20 N. Y. 268.)

1. And the finding was fully sustained by the evidence.

2. The motion for a nonsuit was properly denied. Neither of the grounds taken were tenable in fact or law, and no new ground can now be taken.

3. If there was any defense growing out of the alleged illegality of the transaction appearing in the plaintiff's proof, the point should have been distinctly taken, and not having been taken, it was waived. This defense, like that of usury or the statute of limitations, is personal, and need not be insisted on by any party.

4. And the "opinion" of the referee is no part of the referee's report or findings of fact. It is "annexed," and referred to as "more fully" explaining the "*reasons*" for his findings of facts, as contained in the report; although *annexed* to the report, it is annexed merely as an opinion, giving reasons for the result, and it is nothing more, and is no part of the record.

5. The issue referred to the referee, did not include the portions of the answer to which the plaintiff demurred, and the referee had nothing to do with the issues thus attempted to be made; and if the question of the illegality of the transaction was before the referee at all, it arose upon the evidence of the plantiff, and the point, if intended to be made, should have been distinctly suggested to the referee on the motion to nonsuit.

6. It is, therefore, submitted that the case must be disposed of upon the facts found by the referee in his report, disregarding all extraneous matter discussed by him in his opinion.

II. But if the question as to the alleged illegality of the transaction is open for debate, the judgment must be affirmed.

1. There was nothing illegal, immoral, or against public policy in the agreement between the plaintiff and Brewster, which any court will condemn.

2. The plaintiff had an interest, as subsequent incumbrancer in the mortgaged property or in the anticipated surplus arising on the sale, which he was at liberty to protect by bidding at the sale or to dispose of to any purchaser upon the best terms he could obtain.

3. If on the day of sale he had sold and assigned his judgment to Brewster for $500, or all his interest in the property or surplus for a like or any other sum, no objection could be urged against it, and this was in substance all that the agreement amounted to.

4. The plaintiff was under no legal obligation to protect his interest by bidding at the sale, and the sale of his interest and his retirement from any contest did not injuriously affect the rights of any other creditor of the mortgagor. After the sale of his interest to Brewster for $500, he had no longer any interest in the property or the proceeds of the sale, and it was of no concern to him whether the property sold for more or less.

5. The combination of bidders, which the law condemns, supposes that parties for their joint profit combine, in the purchase of property at a public sale, to the injury of others, and the principle does not extend to a case like the one at bar.

III. Assuming, however, that the agreement between the plaintiff and Brewster was illegal, and could not have been enforced by an action on it against Brewster, it furnishes no defense to this defendant. (*Merritt* v. *Millard*, 5 Bosworth, 645; *Tenant* v. *Elliot*, 1 Bos. and Pul. 3; *Owen* v. *Davis*, 1 Bailey, 315; *Hamilton, Exr.*, v. *Canfield*, 2 Hall Sup. C., 326.)

1. The defendant was not a party to the alleged illegal contract, and no cause of action arises against him *ex turpa causa*, but is founded upon a subsequent transaction and a new and independent consideration. (5 Bosw., *supra*.)

2. The action is not brought upon the supposed illegal contract, and the obligation of the defendant is not affected by it. It does not even grow out of it in any legal sense, and the plaintiff does not require the aid of the illegal con-

tract to support his action. (*Armstrong* v. *Toler*, 11 Wheat. 258; *Pepper* v. *Haight*, 20 Barb. 429.)

3. If the contract was illegal, Brewster might still voluntarily perform it. He might pay over the money by his own hand, or put it in the hands of a third party to be paid to the plaintiff, as in this case. Receiving the money and undertaking to pay it, as the defendant did, gives the plaintiff his action.

4. The obligation of the defendant arose upon the receipt of the money, and not when the agreement was made, and it is entirely separate from and independent of it. He would have been equally liable to the plaintiff if no agreement between the plaintiff and Brewster had ever existed. (*Lawrence* v. *Fox*, 20 N. Y. 268; *The Delaware and Hudson Canal Co.* v. *The Bank*, 4 Denio, 97; *Barker* v. *Bucklin*, 2 id. 45; *Mellen* v. *Whipple*, 1 Gray, 323; *Beers* v. *Robinson*, 9 Barr, 229; *Eagle Bank* v. *Smith*, 5 Conn. 75.)

5. If the order sustaining the demurrer to the answer of the defendant may be reviewed on this appeal, it is submitted that the decision below was right. (5 Bosw. 645, *supra.*)

The judgment of the Superior Court should be affirmed with costs.

MASON, J. This case is so inartificially made, it is difficult to determine what questions are presented for review in this court. We cannot review the case upon the evidence, but must take the facts as found by the referee upon the trial.

Upon the facts as found by the referee in his decision, there really is nothing for this court to review. The referee finds, "that on the 6th day of September, 1851, one Jared Brewster paid to the defendant, the sum of four hundred dollars, to and for the use of this plaintiff, and which the defendant promised and undertook to pay to the plaintiff when requested; and that, although often requested so to do, he has not paid the same or any part thereof, and he found, as a conclusion of law, of course, that the plaintiff was entitled to recover this amount." In his decision, at the conclusion of the findings of fact, he states that the reasons of his

findings are more fully set forth in his opinion thereto annexed.

Now, if we are permitted to regard this opinion as a part of the case, I do not see how it can help the appellant, for the facts are not there found upon which the appellant has here made his argument for a reversal of this judgment.

I am inclined, however, rather to regard the case as presenting the questions argued.

The evidence in the case shows, that on the 6th day of September, 1861, certain real estate in the city of Troy was advertised to be sold on a judgment, in a mortgage foreclosure suit; that the plaintiff, Merritt, held a judgment against the mortgagor, which was the next lien to the mortgage on one undivided half of the premises, and that Jared Brewster claimed to have the next lien to the mortgage on the other undivided half. It was then agreed between the attorney for the plaintiff, Mr. Hadley, and Brewster, that as near as could be ascertained, the cash value of one-half of the surplus likely to arise on the sale was $500, and Brewster then agreed that if the plaintiff would abstain from bidding at the said sale, and would not interfere with the sale, he, Brewster, would pay the plaintiff $500. The plaintiff, in pursuance of said agreement, abstained from bidding at said sale, and the property was purchased by said Brewster.

That after the sale, Brewster gave to the defendant $500, to be paid over to the plaintiff, which the defendant has retained and refuses to pay over.

The defense is that this was an illegal contract between the plaintiff and Brewster, and that no action can be maintained by the plaintiff to recover this money, upon the principle that "*ex dolo malo, non oritur actio;*" that where the cause of action arises, "*ex turpi causa,*" no court will lend its aid to enforce it. The principle is a sound one, and is firmly implanted in the common law. (*Nellis* v. *Clark*, 20 Wend. 24; *Perkins* v. *Savage*, 15 id. 412; *Armstrong* v. *Toler*, 11 Wheat. 258.) The misfortune of the defendant's case is, the principle has no application to it. There is a marked and settled distinction in law between executory and executed

contracts of an illegal character. Whenever the parties have executed a contract for illegal purposes, the court refuses to lend its aid to enable either party to disturb it. The defendant Brewster could not be compelled to pay this money, but when he did pay it to the defendant for the plaintiff's use, it did not lie with the defendant to put the money in his own pocket and refuse to pay it over. Brewster had the right to waive the defense of the illegality of this contract and pay the money, and when he had done so, and placed it in the defendant's hands, upon the simple trust that he should pay it over to the plaintiff, the laws enjoin the duty upon the defendant to pay it, and will not permit him to set up this defense.

This principle is too well settled to require discussion.

It is illustrated in the familiar cases of the conveyance of lands by the mortgagor, subject to a usurious mortgage, where it is held that the grantee, although there is privity of estate, cannot set up the usury in the mortgage, because the mortgagor has waived the usury and constituted the lands a fund in the hands of the grantee for its payment. (*Morris* v. *Floyd and others*, 95 Barb. 130; *Green* v. *Kemp*, 13 Mass. 975; *Badger* v. *Hubbard*, 15 Mass. 103; *Post* v. *Dart*, 8 Paige, 641; *Shufelt* v. *Shufelt*, 9 id. 145; *Cole* v. *Savage*, 10 id. 491; *Ferris* v. *Crawford*, 2 Denio, 598.) The principle is affirmed in this court, in the case of *Sands* v. *Church and others* (2 Seld. 347) wherein it is held that a person who accepts a lien upon or an interest in this equity of redemption of mortgaged premises, as mortgagee, expressly subject to the lien of the prior mortgage, cannot avail himself of usury in such mortgage, in defense to a suit for its foreclosure. This same principle applies where the debtor has assigned property to assignees, and provides for the payment of a usurious debt. The assignees themselves cannot interpose and set up the usury and refuse to pay. (*Green* v. *Morse and others*, 4 Barb. 332.)

It is not to be doubted that it is competent for a party to waive the defense of the illegality of a contract in which he himself participates, and to affirm the same so far as the

parties are concerned. (*Pepper* v. *Haight*, 20 Barb. 429.) If this money had been paid by Brewster directly to the plaintiff, it is clear that, upon the most elementary principle of law, he could retain it against Brewster. The money in that case would, in the strictest sense, belong to him. Does it not equally belong to him when paid to an agent for him? I think it does, and the case of *Tenant* v. *Elliott* (1 Bosw. & Pull. 3) is in point. In that case, A having received money to the use of B, on an illegal contract between B and C, it was held that A shall not be allowed to set up the illegality of the contract as a defense in an action brought by B for money had and received.

The same is held in *Farmer* v. *Russell* (1 Bosw. & Pull. 296). To the same effect is the case of *Hamilton* v. *Canfield* (2 Hall S. C. 526). And to the same effect I understand the case of *Armstrong* v. *Tolet* (11 Wheat. 258). The defendant's liability arose upon the receipt of the money, and is entirely separate and independent of this illegal agreement, and his liability would have been the same if there was no agreement whatever between Brewster and the plaintiff. (20 N. Y. 268; 4 Denio, 97; 2 id. 45; 1 Gray, 323; 9 Barb. 229.)

The judgment of the Superior Court should be affirmed.

Judgment affirmed.