Rudolf A. OETKER, Plaintiff,

v.

Rudolf F. GOLDSMITH et al.,
Defendants.

61–C–893.

United States District Court
E. D. New York.

June 14, 1962.

John P. Rowan, New York City (Platow & Lyon, New York City, of counsel), for defendant Rudolf F. Goldsmith in support of motion for summary judgment.

Richard L. Newman, New York City (Nattier & Anderson, New York City, of counsel), for defendant Brazilian Coffee Institute, opposed.

Michael H. Greenberg, New York City (Graubard & Moskovitz, New York City, of counsel), for defendant Carl Borchsenius, Co. Inc., attaching creditor opposed.

Tallman Bissell, New York City (Haight, Gardner, Poor & Havens, New York City, of counsel), for Rudolf A. Oetker, plaintiff in interpleader.

DOOLING, District Judge.

In a carrier's interpleader suit, defendant Goldsmith moves for summary judgment awarding him possession of certain bills of lading covering coffee made out to his order which the defendant Brazilian Coffee Institute, an agency of the United States of Brazil, holds in its possession. Goldsmith contends that he bought the coffee symbolized by the bills of lading from "defendant" Exportadora e Importadora Visalia, Ltda., a Brazilian company, that the bills of lading issued against the coffee on Visalia's orders by the ocean carrier are to Goldsmith's order, that Visalia has disclaimed any interest in this litigation, that no other party claims any title not both derivative from Visalia's and subordinate to Goldsmith's, and that, in consequence, Goldsmith's right to possession of the bills of lading and the coffee is immediate and unconditional.

The Brazilian Coffee Institute contends that Goldsmith has not shown a sale to him, nor a legally enforceable sale to him, nor any right to get the bills of lading from it because it holds them to enforce Visalia's performance of its undertakings to the Institute to remit to Brazil the dollar proceeds of any sale of the coffee and to pay certain charges due Brazil.

Defendant Borchsenius contends that it has attached the bills of lading as Visalia's property in the hands of the Institute in an action in the State Court in which Visalia is the defendant. Borchsenius argues that if the bills of lading were still Visalia's at the moment of levy (November 22, 1961) its attachment lien should be given its wonted effect.

At the heart of the case is the fact that Brazilian exporters subject to Brazil's exchange control laws are said to receive for each dollar paid for their goods about 105 cruzeiros whereas the "free" rate of exchange is said to be about 300 cruzeiros for each dollar (Tr. 61–62). Were Visalia prepared and able now to remit to Brazil the dollar proceeds of a fair sale of the coffee, pay the governmental charges and accept a cruzeiro equivalent at the rate of exchange prevailing in officially controlled transactions, the main part, if not all, of this litigation would terminate (Cf. Tr. 59–62).

█ Since Goldsmith has not possession of the bills of lading he must show that he has a right to possession of them or a right to claim the coffee of the carrier without surrendering the bills of lading. The first alternative requires a showing that the Institute's possession is not lawful as against Goldsmith. The second alternative requires a showing that Goldsmith is entitled to the possession of the goods and has a right to compel the carrier to forego surrender to it of the bills of lading as a condition of delivery.

█ The form of the bills of lading, listing Goldsmith as consignee, settles nothing. The bills of lading were not delivered to Goldsmith but to the Institute. Hence Goldsmith must show more and seeks to do so by bringing forward evidence of a sale of the coffee (not of the bills of lading) to him. If the seller had still the power to make an effective

complete sale of the coffee at the critical moment, so that all of the property in the coffee vested in Goldsmith, then the bills of lading would not signify anything. To meet this point, therefore, and keep the bills of lading alive as controlling the coffee and its possession of the bills of lading lawful as against Goldsmith the Institute brings forward evidence to show that it has a special governmental property in the bills of lading as symbols of the coffee designed to secure performance by Visalia of its exchange duties and presents also an analysis of Goldsmith's evidence of the sale to him calculated to show that the supposed sale came too late and to show that the sale evidence is in any event so alive with suspicious circumstances as to be incredible.

A systematic examination of the evidence seems necessary and to facilitate reference the data will be set out in findings form.

1. The Brazilian Coffee Institute is a corporation or other business entity under the laws of the United States of Brazil with its principal place of business in Rio de Janeiro, Brazil. (Amended Complt. "Fourth"; Goldsmith Answer "Fourth"; Institute Answer "3"; Borchsenius answer "8").

2. The Institute is an agency of the United States of Brazil (Institute answer 3, 6; Rowan aff'd. 1/22/62, pp. 8–9, 17).

3. At the times in question the law of Brazil required that the foreign exchange proceeds of exports from Brazil be assigned and paid over to the Bank of Brazil and the Institute through a Brazilian commercial bank; such assignment in ordinary course is required of exporters before they are given, in the case of coffee exports, the requisite permission of the Institute to load coffee from warehouse to shipboard for export (Rego 11/28/61 p. 2, Ex. A–1).

4. Exportadora e Importadora Visalia, Ltda., is a Brazilian company with its principal office in Rio de Janeiro (Amended complaint "Sixth"; Borchsenius answer, admits by not denying; Institute answer "1").

5. The banks of Brazil were closed by a strike from October 17 to October 30, 1961 (Rego 11/28/61 p. 2).

6. Under date of October 19, 1961 Visalia by letter offered 25,000 bags of yellow coffee of the last crop to Goldsmith (or invited an offer from Goldsmith) at $36.00 a bag for shipment to any European port (Platow 3/20/62, par. 3, Ex. A).

7. On October 24, 1961 Goldsmith cabled Visalia an offer or counter-offer for 25,000 bags of yellow coffee to be shipped 15,000 bags to New York and 10,000 bags to New Orleans; Goldsmith requested immediate shipment of 7,500 bags on the Cap Castillo and stated a Chase Manhattan credit of $314,000 was being called (Platow 3/20/62 par. 4(a), Ex. B).

8. On October 25–27, 1961 in Rio de Janeiro;

A. Visalia by two letters of identical terms on October 25, 1961 requested the permission of the Institute to ship on the S/S Cap Castillo to New York 14,350 bags of coffee valued at $598,661.91 without presentation of clearance papers, which Visalia undertook to present, together with a certificate of currency exchange issued by the Office of Bank Control, as soon as the bank strike was over; as further guarantee Visalia gave the Institute letters of October 25, 1961 addressed to and acknowledged by the S/S Cap Castillo's agent in which Visalia directed the ship to deliver the bills of lading for the coffee to the Institute (Rego 11/28/61 Ex. A, A–1, B, B–1, C, C–1, D, D–1).

B. On October 25, 1961 the Institute and the Bank of Brazil, Office of Bank Control, authorized the permission to ship by subscription to and endorsement on the letters of Visalia to the Institute (ibid.)

C. On October 26, 1961 the coffee was loaded aboard the S/S Cap Castillo and

thirteen on board order bills of lading naming Visalia as shipper, Goldsmith, or order, as consignee, Rio de Janeiro as port of loading and New York as port of discharge were made out and signed by Visalia and the S/S Cap Castillo's agent (Complt. Ex. A; Platow aff'd 3/20/62, Exs. I–1 to I–13).

D. On October 27, 1961 the S/S Cap Castillo's agent by letter of transmittal delivered to the Institute "by order and for account of" Visalia the thirteen bills of lading in question, which the letter of transmittal described as having been "issued to the order of R. F. Goldsmith" (Rego 11/28/61 Exs. E, E–1, F, F–1).

E. The S/S Cap Castillo sailed, bound for New York (ibid.).

9. On or after October 26, 1961 Visalia cabled Goldsmith that 14,350 bags had been shipped on the S/S Cap Castillo *,—inquired for the identifying number of the letter of credit opened in the transactions and said the "samples" would be in Goldsmith's hands on the next day (Platow 3/20/62, Ex. C).

10. On October 31, 1961 Goldsmith cabled Visalia that the "samples" did not correspond to the description of the coffee purchased, that he (Goldsmith) did not intend to open a letter of credit and that he (Goldsmith) considered the transaction cancelled and Goldsmith asked to whom he should turn over the coffee samples (Platow 3/20/62 Ex. D).

11. The Brazilian bank strike ended October 30, 1961 (Rego 11/28/61, par. 11).

12. Visalia did not as soon as the bank strike ended, or at any time, comply with the requisite of presenting a complete set of clearance papers to the Institute or submit to the Institute the certificate of currency exchange issued by the Office of Bank Control (Rego 11/28/61 Exs. A–1, B–1; par 11); Visalia has not at any time made, and in this action does not assert, any claim against the Institute to obtain the return to it (Visalia), against the presentation

to the Institute of a complete set of clearance papers or otherwise, of the bills of lading in question (ibid; Visalia "Release from Responsibility" and "Declaration" filed in this action January 16, 1962).

13. On November 2, 1961 in New York City the Institute orally advised plaintiff's assistant traffic manager circumstantially that Visalia had not "complied with the established procedure by making the proper closing of exchange" and requested plaintiff's "cooperation in order to stop clearance of this coffee without our [i. e., the Institute's] authorization", stating that all the conditions of shipment had been made clear to plaintiff's Rio de Janeiro agent; the oral advice to plaintiff was confirmed by letter of November 3, 1961 to plaintiff (Complt. Ex. D).

14. On November 3, 1961 Visalia cabled Goldsmith its disagreement to Goldsmith's "cancellation" of the contract and Visalia advised that its principal was leaving for New York to settle the matter (Platow 3/20/61, Ex. E).

15. Under date of November 6, 1961:

A. Goldsmith and Visalia in New York City signed a letter under the terms of which Goldsmith agreed to buy the 14,350 bags of coffee on the Cap Castillo (as well as the 10,500 bags on the S/S Montevideo) at 24¢ a pound; the coffee was to be equal to the samples and payment was to be by 90 day drafts against commercial invoice; the letter concluded "We (Goldsmith) understand that you will furnish us with clean on-board ocean bills of lading in due course." (Platow 3/20/62, Ex. F).

B. Visalia prepared, dated at Rio de Janeiro, an invoice to Goldsmith for $454,608 for the 14,350 bags of coffee shipped on the S/S Cap Castillo; (two invoices of similar forms were prepared for the 10,500 bags on the S/S Montevideo) (Platow 3/20/62, Exs. G–1 to G–3).

---

* The cable indicated another 10,500 bags had been shipped on the "Montevideo".

C. Visalia prepared, dated at Rio de Janeiro, a bill of exchange to its own order for $454,608 in form drawn on Goldsmith at 90 days sight (Platow 3/20/62, Ex. O²). (Similar drafts were prepared for the two lots on the S/S Montevideo).

D. The instruments described in subparagraphs A through C were all signed on behalf of Visalia by Oclando Gnandi Ernesto Filho; the date and place of the preparation of the instruments described in subparagraphs B and C is not determinable on this record; it is inferred that they were either not prepared in Rio de Janeiro but in New York City or were prepared on a date other than November 6, 1961.

16. At some date at or after its preparation Visalia placed its endorsement in blank on the bill of exchange described in paragraph 15C. (Platow 3/20/62, Ex. O-1).

17. On November 11, 1961 the Institute cabled the Master of the S/S Cap Castillo that the Institute possessed the bills of lading in question and that delivery could be made only to the Institute (Amended Complt. "FOURTEENTH").

18. The S/S Cap Castillo arrived at New York, docked in the Eastern District of New York and discharged the coffee covered by the bills of lading in question into storage under plaintiff's control in the Eastern District of New York on November 13–15, 1961. (Amended Complt. "EIGHTH", "NINTH", "TWENTY-FIRST").

19. Goldsmith and the Institute both tendered the ocean freight to plaintiff, demanding control of the coffee; plaintiff retains the coffee and is due its ocean freight and storage costs, pendente lite, in New York.

20. Borchsenius obtained a warrant of attachment on November 21, 1961 in the Supreme Court of the State of New York, County of New York which the Sheriff of the City of New York on November 22, 1961 purported to levy on the bills of lading in question as the property of Visalia by delivering a copy of the warrant to the Institute. The Institute made a certificate to the Sheriff that the bills of lading were the property of Visalia.

21. On December 12, 1961 in the same action referred to in paragraph 20, the Sheriff purported to levy on the coffee by delivering a copy of the warrant to plaintiff.

22. By instrument entitled and filed in this action on January 16, 1962, Visalia, acting by the same Oclando Gnandi Ernesto Filho referred to in paragraph 15, on January 3, 1962 in Rio de Janeiro disclaimed any interest in the present action and released all the parties to the action of any responsibility to Visalia; by a second instrument, executed January 3, 1962 in Rio de Janeiro, and similarly entitled and filed in this action, Visalia by Oclando Gnandi Ernesto Filho, acknowledged that the summons, complaint and order for the service of them on Visalia had been received, declared that Visalia would not appear and had no complaint against any party to the action and was attaching the "release of responsibility" referred to above in this paragraph.

23. Neither the letters of the Banque Belgo-Neerlandaise of January 15 and 22, 1962, (Platow 3/20/62, Exs. J, L), nor the form of the bill of exchange nor its forms of endorsements (Platow 3/20/62, Ex. O-1), nor the form of the note of February 5, 1962 presumably replacing the bill of exchange (Platow 3/20/62, Ex. P-3) evidences a negotiation by Visalia of the bill of exchange or indicates that the later note is not owned by Visalia.

24. As between Goldsmith and Visalia, under the terms of the letter agreement of November 6, 1961 (Platow, 3/20/62 Ex. F), clean on-board ocean bills of lading not having been delivered to Goldsmith in due course, Goldsmith at all times after the expiration of a reasonable time from November 6, 1961, had a defense to any action by Visalia

on the letter agreement and to any action on Goldsmith's acceptance (Platow 3/20/62, Ex. O–1) if it had not been negotiated to a holder in due course (and there is no evidence that it had been so negotiated), or on Goldsmith's later note (Platow 3/20/62, Ex. P–3) which is not shown to be held for account of any one other than Visalia.

A review of these propositions indicates that quite probably each one is correct though hardly established (or disestablished) with the degree of certitude required for summary judgment (See United States v. Diebold, Incorporated, 1962, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176). The indicated challenges to the facts, however, are on immaterial points. The "fraud" and "sham" that the Institute charges go no farther than an insistence that Visalia rather than Goldsmith is the owner without meeting the fact that Visalia as owner or vendor obviously means Goldsmith to get the bills of lading. To Borchsenius the title point makes a theoretical difference, if its attachment levies are valid and still subsist, but its claim could as readily be asserted against Visalia's chose in action for the price as against Visalia's property in the goods.

■ The real question, the only one of moment, is whether the Institute can hold on to the bills of lading. It got them on very simple terms; it was to give them up upon the performance of an act that is still unperformed. No one yet has offered to perform that act and there is an end of the matter; the Institute can continue to hold on until the act is performed and the present lawsuit must therefore be dismissed as against it unless upon some esoteric theory the matter can be complicated to another result. The Institute cannot get affirmative relief here to "foreclose" its "lien", for that is not the nature of its interest: it holds a bail, in reality, a paper hostage for the performance of an act; there is no debt due to it that it can realize out of the coffee; what is due it is a conformity of conduct to a rule, and its interest extends no farther than to prevent the coffee's being sold (quite without reference to whether the sale has or has not occurred) without remitting the dollar (or other) exchange to Brazil and there receiving cruzeiros for foreign currency.

It would not matter that the general property in the coffee had passed to Goldsmith; Goldsmith's general "title" would be no better than Visalia's as generative of a right to get the bills of lading from the Institute. The defect in Goldsmith's case would still be that he does not come forward with the performance of the act that Visalia promised the Institute it would perform and so Goldsmith can not get the bills of lading any more than Visalia could, whether he presents himself as buyer from Visalia or agent or *alter ego* of Visalia.

■ Can the Institute be forced to surrender the bills of lading just because it is (a) an agency of the United States of Brazil and is not a commercial creditor holding a security for a money claim but (b) is holding the bills of lading until performance of a promise to channel the avails of any sale of the coffee into the circuit of the Republic's foreign exchange controls? Not even Banco do Brasil, S. A. v. A. C. Israel Commodity Co., 1st Dept.1961, 13 A.D.2d 652, 216 N.Y.S.2d 669, aff'g. 29 Misc.2d 229, 215 N.Y.S.2d 3, goes so far; Kolovrat v. Oregon, 1961, 366 U.S. 187, 197, 81 S.Ct. 922, 6 L.Ed.2d 218 suggests a field of operational validity for foreign countries' exchange regulations that extends abroad. And without venturing beyond strictly territorial views, it is not apparent that a possession abundantly lawful when acquired in Brazil loses its legality when the possession is continued here. Cf. Dougherty v. Equitable Life Assurance Society, 1934, 266 N.Y. 71, 90, 96–98, 193 N.E. 897; Salimoff & Co. v. Standard Oil Co., 1933, 262 N.Y. 220, 186 N.E. 679, 89 A.L.R. 345; Anderson v. N. V. Transandine, etc., 1942, 289 N.Y. 9, 19–20, 43 N.E.2d 502; Perutz

v. Bohemian Discount Bank in Liquidation, 1953, 304 N.Y. 533, 537, 110 N.E.2d 6; Southwestern Shipping Corp. v. National City Bank, 1959, 6 N.Y.2d 454, 460, 190 N.Y.S.2d 352, 160 N.E.2d 836; Banco De Espana v. Federal Reserve Bank, 2d Cir.1940, 114 F.2d 438, 443–444.

Goldsmith is not, then, on any view of the case entitled to possession of the bills of lading as against the Institute nor to have the coffee itself from the plaintiff carrier or its warehouseman. The Institute is entitled to hold the bills of lading until a proper certificate of currency exchange issued by the Office of Bank Control is submitted to it, as part of the complete set of clearance papers contemplated by the letters of October 25, 1961, by Goldsmith or by someone else satisfactorily connected with the Visalia title or, strictly, with the original ownership of the coffee, for Visalia is not necessarily a principal.

The Institute's first cross-claim (pars. 6–19) for the damages in continuing storage costs incident to the present stalemate, if not barred on the doubtful theory of Banco do Brasil, S. A. v. A. C. Israel Commodity Co., supra, which has been appealed to the New York Court of Appeals, presents a claim seemingly unsound in theory. The charges of fraud, conspiracy and sham go for naught; they mean only that Visalia has not done what it engaged to do and that Goldsmith is willing to abide the event of a continuing effort, by this lawsuit and otherwise, to avoid paying the dollars into the Brazilian exchange system. That is not a legal wrong on Goldsmith's part. Assuming that Visalia's engagements to the Institute were so far contractual that their breach can be sued upon (Institute answer, pars. 13, 15), and that they are not rather formal recognitions of a duty, still undischarged, to comply with applicable law in a particular way, the resulting claim is put forward purely *in personam* and cannot survive in this action against Visalia which has not appeared and cannot be compelled to appear.

The Institute's further claims to oust Goldsmith from any interest in the coffee and bills of lading are devoid of merit. Goldsmith has what he has, a bare title in a transaction still *in fieri* and possibly requiring to be completed on different price terms if it is to be consummated at all (Rego 11/28/61, p. 7). Cf. Cermak v. Bata Akciova Spolecnost, N.Y.Co.1948, 80 N.Y.S.2d 782, 784–785 aff'd. 1st Dept.1949, 275 App.Div. 919, 90 N.Y.S.2d 680. Goldsmith cannot be "foreclosed" of his transaction and the opportunity to consummate it and in that connection he may keep his title, slight, as it is, as against the Institute since it derives from Visalia and is not impeachable by the Institute as far as it goes and as long as it lasts.

Determination in this case of the interest of Borchsenius is premature. Nothing in the disposition made divests the levies it has caused to be made under the warrant of attachment if the levies are valid (N.Y. Personal Property Law § 216, 211).

The result is that little has been or can be accomplished by this litigation. The consequence, since neither the Institute nor Goldsmith can by this litigation terminate the other's interest in the bills of lading, is that the impasse will continue until, like any other economic deadlock, the parties themselves resolve it transactionally.

Submit final order on notice for settlement within ten days hereof:

1. Providing final relief to plaintiff as contemplated in part 10 of the order of Chief Judge Zavatt of December 14, 1961 including provision for

(a) Final injunction against suits by any defendant against plaintiff;

(b) Payment by the Institute to plaintiff of the ocean freight and storage charges to the date of order and surrender by the Institute to plaintiff of

the original ocean bills of lading, each of which will have been endorsed by Goldsmith as hereinafter ordered, against the delivery by plaintiff to the Institute of negotiable warehouse receipts for the coffee drawn to the order of Goldsmith and unendorsed by him;

2. Dismissing the claim of Goldsmith set forth in his answer filed January 8, 1962 on the merits;

3. Dismissing the cross-claims of the Institute set forth in its answer filed January 8, 1962 except to the extent of adjudging that the Institute is of right entitled to withhold from Visalia and anyone claiming under Visalia the bills of lading and warehouse receipts standing in lieu thereof until substantial performance of the terms of the letters of October 25, 1961 of Visalia to the Institute; and adjudging that the Institute has and shall have a lien on the warehouse receipts and the coffee represented by them in priority to any interest of Goldsmith, Visalia or those claiming under them, for the ocean freight and storage charges paid by the Institute and that it may pay in future;

4. Directing Goldsmith to endorse and redeliver to the Institute for surrender to plaintiff the bills of lading issued by plaintiff, upon the exhibition to Goldsmith of the negotiable warehouse receipts made out to his order and delivered by plaintiff to the Institute;

5. Dismissing the counterclaim of Borchsenius set forth in its answer filed January 5, 1962 without prejudice to any action Borchsenius may hereafter bring or cause to be brought by the Sheriff of the City of New York or otherwise against the Institute or the warehouseman issuing the receipts hereinabove referred to in order to enforce any valid levy it may have;

6. Dissolving the provisions of part 8 of the order of Chief Judge Zavatt dated December 19, 1961;

7. Making such other provisions as counsel consider appropriate for submission in the light of the foregoing.