SANTIAGO COTTO *v.* RAMON MARTINEZ ET AL.

COURT OF COMMON PLEAS     HARTFORD COUNTY     FILE No. 90535

Memorandum filed December 20, 1965

*John M. Byrne,* of Hartford, for the plaintiff.

*Fauliso, Katz & Hansen,* of Hartford, for the defendants.

MIGNONE, J. This action was, in a substituted complaint, brought in six counts. The essence of all six is that the defendants are indebted to and have in their possession the sum of $6500 belonging to the plaintiff and that the defendants refuse to pay this sum over to the plaintiff although due demand has been made.

The action arises out of a "hit" by the plaintiff in a Puerto Rican lottery wherein his $13 bet on a certain number, placed with the defendant Ramon Martinez, a numbers seller for that lottery, came in for a $6500 win. On June 30, 1964, the defendants Ramon and Theresa Martinez, husband and wife, were walking on Kennedy Street in Hartford en route to the home of the plaintiff to deliver the lottery payoff winnings to him. The defendant Theresa Martinez was carrying, in a paper bag, the sum of $5740, which represented the balance of the $6500 payoff to the plaintiff after deduction of the customary 10 percent commission to the defendant Ramon Martinez as the seller of the winning ticket. Two men snatched a pocketbook from the defendant Theresa Martinez and upon being apprehended by the police at the scene tipped them off as to the money being carried in the paper bag in the hands of the defendant Theresa Martinez. The plaintiff and the two defendants were arrested and charged with a violation of General Statutes § 53-298, relating to lotteries, and the money was taken into police custody. The charges were dropped against these parties in the Circuit Court when the court sustained a motion to suppress evidence which was filed in behalf of the defendant Martinez. A motion, filed by the state, to confiscate the money

was denied. The Circuit Court wrote finis to its involvement in this matter by ordering return of the money to its "lawful owner." The money is still in the custody of the Hartford police department, subject to garnishment in this action.

The essential issue raised by the substituted complaint and the special defense filed by the defendants is whether the plaintiff is entitled to judgment in his favor for the sum of money in issue. The instant situation appears to be one of first impression in this state.

The evidence adduced is uncontested that the plaintiff placed a $13 bet with the defendant Ramon Martinez on a certain number to come out in the Puerto Rican lottery and that the plaintiff had the winning number. It is of no material consequence here whether defendant Ramon Martinez was in fact the banker or the agent for placement of the bet only. A number of state statutes prohibit gambling enterprises in various forms. Section 52-553 makes wagering contracts void; § 53-290 prohibits lotteries; § 53-293 prohibits the sale of lottery tickets; § 53-295 prohibits pool selling; § 53-298, the statute directly involved here, prohibits policy playing. The basis of the plaintiff's claim as pressed in his brief is that the money was actually in the hands of the defendant Theresa Martinez and that she was in no way involved in any illegal transaction. The court cannot, on the evidence, accept this interpretation of the situation. In fact it must conclude that the only function the defendant Theresa Martinez was performing at the time was to be in the physical possession of the money in the paper bag, walking beside her husband Ramon, and holding it for and at his order. The court cannot accept the contention made that the defendant Theresa was unaware of what was in the bag and must conclude that she

knew full well that this money was being delivered by her husband to the plaintiff as the consummation of a lottery winning. The defendant Theresa Martinez stands in pari delicto with the husband in this transaction. Section 54-196 of the General Statutes states that "[a]ny person who assists, abets, counsels, causes, hires or commands another to commit any offense may be prosecuted and punished as if he were the principal offender." The claim, therefore, that she was a mere bailee or depositary of funds belonging to the plaintiff cannot prevail.

Although the precise issue presented here has not, apparently, arisen in this state, the decision in *Ciampittiello* v. *Campitello,* 134 Conn. 51, would appear to be controlling. That case involved a claim for distribution of one-half of the proceeds won in wagers on horse races by two brothers in Rhode Island, where such pari-mutuel betting on horse races was legal. The court pointed out (p. 54) that the plaintiff, to "establish his right to the fund . . . would necessarily have to prove the facts as a result of which it came into the possession of the deceased; and that would bring directly into the case the fact that it was the result of a joint gaming operation. In his statement of claim he placed before the court all the elements of the gambling adventure, and the simple fact is that the fund represented the profits resulting from successful bettings on horse racing." So in this case the simple fact is that the money in issue represented the profits resulting from a successful "hit" in a lottery. Although the *Ciampittiello* case, supra, is in fact a stronger case for the plaintiff than the instant one, horse-race betting being legal in Rhode Island where it took place, the court denied relief on the basis that a deep-rooted public policy precluded the enforcement of the claim in a Connecticut court. Here the illegal transaction, policy playing, is by statute made a criminal offense.

It is not a mere matter of public policy. The fact is that the defendant Theresa Martinez played no role in this bizarre episode independent of her husband and at the time of the impounding of the money by the police was only acting as his carrier.

The plaintiff has referred to a number of cases in other jurisdictions which he interprets as supporting his legal claim to possession of this sum. They are first of all distinguishable on the facts. In this case, both the defendant Ramon and his wife, the defendant Theresa, must be held to be acting jointly in trying to bring about the consummation of a violation of the policy playing statute by delivery of the winnings. She was not a "mere agent or depository of the proceeds of an illegal transaction," as the court described the defendant in *Southwestern Shipping Corporation* v. *National City Bank,* 6 N.Y.2d 454, 460 (1958), relied upon by the plaintiff.

In contrast to the *Southwestern Shipping Corporation* case, supra, the later New York case of *McConnell* v. *Commonwealth Pictures Corporation,* 7 N.Y.2d 465 (1960), is in keeping with what is clearly a majority rule. It points out (p. 469): "New York's policy has been frequently and emphatically announced in the decisions. ' "It is the settled law of this State (and probably of every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose" *(Stone* v. *Freeman,* 298 N.Y. 268, 271, citing the leading cases). The money plaintiff sues for was the fruit of an admitted crime and "no court should be required to serve as paymaster of the wages of crime" *(Stone* v. *Freeman, supra,* p. 271). And it makes no difference that defendant has no title to the money since the court's concern "is

not with the position of the defendant" but with the question of whether "a recovery by the plaintiff should be denied for the sake of public interests", a question which is one "of public policy in the administration of the law" *(Flegenheimer v. Brogan,* 284 N.Y. 268, 272). That public policy is the one described in *Riggs* v. *Palmer* (115 N.Y. 506, 511-512); "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes" ' *(Carr* v. *Hoy,* 2 N Y 2d 185, 187)." As that decision further emphasizes (p. 470), "the money sued for was (assuming the truth of the defenses) 'the fruit of a crime.' To allow this plaintiff to collect his commissions would be to let him 'profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his own iniquity, or to acquire property by his own crime' *(Riggs* v. *Palmer,* 115 N.Y. 506, 511)."

The fatal flaw in plaintiff's theory of recovery is that the defendant Theresa was not a "mere depository or escrowee . . . holding money or goods for one of the parties without . . . [herself] being a party to the transaction sued upon." See *McConnell,* supra, 472, where the court distinguishes the earlier case of *Southwestern Shipping Corporation* v. *National City Bank,* supra, on this very point. Under the admitted circumstances of this case, no claim can be sustained that the defendant Ramon Martinez was such an innocent third party. And neither, as pointed out above, can the defendant wife, Theresa, fit into that category. See also *Carr* v. *Hoy,* 2 N.Y.2d 185, 188, where the decision points out that "[t]he defense of illegality 'is allowed not as a protection

to a defendant, but as a disability to the plaintiff' *(Reiner* v. *North Amer. Newspaper Alliance,* 259 N.Y. 250, 256). We are closing our courts to one who would prove his own wrongdoing as a basis for his supposed 'rights'." And see also note, 8 A.L.R.2d 307, 329. In this case all parties, plaintiff and the two defendants, were in pari delicto. And "whatever the state of the pleadings, 'when the evidence shows that . . . [a party] in substance seeks to enforce an illegal contract or recover compensation for an illegal act, the court has both the power and duty to ascertain the true facts in order that it may not unwittingly lend its assistance to the consummation or encouragement of what public policy forbids.' " *Tri-Q, Inc.* v. *Sta-Hi Corporation,* 45 Cal. Rptr. 877, 889 (1965).

The defendant has argued the illegality of the wagering contract in issue. As is aptly stated in *S. Stern, Henry & Co.* v. *McDermott,* 38 Misc. 2d 50, 55 (N.Y.), "[t]he objection that a contract is illegal, it is true, comes with poor grace from the mouth of a defendant. Nonetheless, the court will not aid either of the parties to an agreement forbidden by law." See also the recent Idaho Supreme Court decision of *Whitney* v. *Continental Life & Accident Co.,* 403 P.2d 573 (1965).

On the only issue before the court, it has no alternative but to find against the plaintiff. It is not required to and does not decide that either of the defendants is the "lawful owner" of the money in issue.

Judgment may enter against the plaintiff.