**In re W. T. GRANT COMPANY, Bankrupt.**

**Charles G. RODMAN, as Trustee of the Estate of W. T. Grant Company, Bankrupt, Plaintiff,**

**v.**

**N & A GOLDMAN CO., INC., Defendant.**

No. 75 B 1735, 79 Civ. 3058.

United States District Court, S. D. New York.

Nov. 9, 1979.

 

Marcus & Angel, P. C., New York City, for defendant by Joshua J. Angel and Eric P. Wainer, New York City.

Weil, Gotshal & Manges, New York City, for plaintiff by Richard P. Krasnow, New York City.

## OPINION

MacMAHON, District Judge.

Defendant, N & A Goldman Co., Inc. ("Goldman"), appeals from an April 11, 1979 order of Hon. John J. Galgay, Bankruptcy Judge, denying Goldman's motion to dismiss the complaint for lack of jurisdiction over its person. Rule 12(b)(2), Fed.R.Civ.P.

W.T. Grant Company ("Grant") filed a petition October 2, 1975 for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701 et seq. Grant operated a nationwide chain of retail stores and continued to do business as debtor-in-possession until adjudicated a bankrupt on April 13, 1976. Suppliers were unwilling to extend credit, and Grant, with the authorization of the bankruptcy court, was required to pay cash before delivery ("CBD") to insure an uninterrupted flow of merchandise to its stores.

Grant made CBD payments to Goldman totalling $412,579.47 pursuant to two letter agreements dated December 30, 1975 and January 28, 1976. Each agreement provided:

> "We enclose herewith a check of W.T. Grant as Debtor-in-Possession in the amount of . . . . This check is given to you as an advance payment against store purchase orders for the following items: . . .
>
> We are releasing this check to you upon your express agreement that (1) you have on hand and will immediately ship the merchandise described by the above described orders, (2) you will apply the enclosed check only against your invoices for such shipments and not against any other obligations whatsoever, and (3) *any dispute concerning this letter or this advance payment will be determined by the chapter XI court.*" (Emphasis added.)

On February 12, 1976, the bankruptcy court ordered Grant to begin liquidating its remaining retail operations, and on February 26 Grant cancelled all orders for merchandise not yet shipped. This action seeks to recover $339,921.07, the amount of CBD payments still held by Goldman under cancelled orders for merchandise not yet shipped.

The only question on this appeal is whether the bankruptcy court has jurisdiction over this action. We hold that it does and affirm.

█ Following an evidentiary hearing held on December 8, 1977, Judge Galgay, in a careful opinion, found jurisdiction based on Goldman's consent contained in clause (3) of each of the letter agreements, *supra*. Beyond question, the defendant in a controversy not otherwise within the subject matter jurisdiction of a bankruptcy court may confer such jurisdiction by its consent. *MacDonald v. Plymouth County Trust Co.*, 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093 (1932); *In re Eastern Freight Ways, Inc.*, 453 F.Supp. 934 (S.D.N.Y.1977).

Goldman does not dispute that a valid consent would confer jurisdiction but contends that there is no valid consent here. Noting the reference in the letter agreements that payment was to be made against "store purchase orders" * and to be applied only against the supplier's "invoices," Goldman argues that these requirements were conditions precedent which were not performed and that absent such performance the "agreements" were mere receipts for CBD payments.

Testimony at the hearing of December 8, 1977 shows that at the time of execution of the first letter agreement, Goldman did not possess the merchandise specified in the letter and that Grant had not given Goldman a store purchase order, nor had Goldman rendered an invoice for any shipments. Informed of these circumstances in a conversation held before execution of the agreement, Grant assured Goldman that store purchase orders would be given Goldman before the delivery date specified in the underlying contract. Goldman offered to execute the agreement on condition that Grant give the requisite store purchase orders, and Grant responded that the agreement was merely a receipt for the CBD payments. There was also discussion concerning the consent to bankruptcy court jurisdiction contained in clause (3) of the agreements, but no evidence was introduced that a contrary agreement on that subject was made between the parties.

█ Whether parol evidence may be admitted in evidence to vary the terms of a written agreement is a matter of substantive rather than evidentiary law. *Lee v. Joseph E. Seagram & Sons, Inc.*, 552 F.2d 447, 451 (2d Cir. 1977). Consequently, we must apply state law to resolve the issue. *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1934).

█ New York courts rely on the "grouping of contacts" theory in deciding which state law to apply in resolving a contract dispute. *Auten v. Auten*, 308 N.Y. 155, 124 N.E.2d 99 (1954). The purpose of this choice of law doctrine is to give control over legal issues to the state which has the most direct interest in a given contract. Since the two agreements here were made in New York and were to be performed in this state as well, and in the absence of any evidence that the parties intended the law of another state to govern, clearly New York has the most significant interest in this dispute. *See Southwestern Shipping Corp. v. National City Bank*, 6 N.Y.2d 454, 190 N.Y.S.2d 352, 160 N.E.2d 836 (1959). Accordingly, we apply the New York parol evidence rule to the agreements before us.

Section 2–202 of the New York Uniform Commercial Code (McKinney 1964) codifies the parol evidence rule as it applies to contracts of sale. It provides:

"Terms with respect to which the confirmatory memoranda of the parties

---

* Testimony at the hearing indicates that "store purchase orders" are directions for shipment of specific goods to particular destinations given to a supplier pursuant to a merchandise contract.

agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (Section 1–205) or by course of performance (Section 2–208); and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

Defendant maintains that the giving of the store purchase orders mentioned in the letter agreements is a condition precedent to the effectiveness of its consent to the jurisdiction of the bankruptcy court over this dispute and further contends that, absent such orders, the agreements served only as receipts for CBD payments and not as contracts.

 Since explicit reference is made to secondary documents, such as store purchase orders and invoices not contained in the letter agreements, they were clearly not intended to be "a complete and exclusive statement of the terms of the agreement" and consequently may be supplemented by "evidence of consistent additional terms." New York U.C.C. § 2–202, supra. Thus, if defendant only sought to show that delivery of store purchase orders by Grant was a condition precedent to defendant's obligation to deliver merchandise, evidence of a contemporaneous oral understanding to that effect would be properly admitted since the written agreements are not fully integrated and such a provision would not contradict their terms. *Hunt Foods & Industries, Inc. v. Doliner*, 26 A.D.2d 41, 270 N.Y.S.2d 937 (1st dep't 1966). Goldman seeks, however, to prove that the giving of store purchase orders was a condition precedent to its consent to the jurisdiction of the bankruptcy court. This contention is deficient in two respects. First, there is no evidence, parol or otherwise, upon the hear-ing showing that Goldman's consent to jurisdiction was predicated on its receipt of the store purchase orders. Second, even if parol evidence established such a precondition to defendant's consent, it would not be admissible because it would be clearly inconsistent with clause (3) of the agreements. New York U.C.C. § 2–202(b), *supra; see Thomas v. Scutt*, 127 N.Y. 133, 138, 27 N.E. 961, 962 (1891).

 Defendant also maintains that since store purchase orders were not given at the time the letter agreements were executed, the agreements were not contracts but mere receipts. If their *sole* function was as receipts, this would wholly remove the prohibition of the parol evidence rule against terms contradictory to the writings. 9 Wigmore, Evidence § 2431, pp. 104–105 (3d ed. 1940). However, the bankruptcy court found, correctly we believe, that although the existence of a condition precedent may have rendered the agreements mere receipts as to the CBD payments, they, nevertheless, contained independent contractual commitments to submit disputes arising from the agreements to the jurisdiction of the Chapter XI court. It is clear in New York that "where a contract is embodied in a receipt, then, so far as the receipt contains a contract, it cannot be controverted or explained by parol." *Verstandig & Sons, Inc. v. Sobel*, 26 Misc.2d 649, 652, 206 N.Y.S.2d 860, 864 (Sup.Ct.N.Y. Co.1960). *See Komp v. Raymond*, 175 N.Y. 102, 67 N.E. 113 (1903).

Accordingly, we agree with the bankruptcy court's finding that defendant submitted to that court's jurisdiction unconditionally by executing the written agreements of December 30, 1975 and January 28, 1976.

We affirm the order of Judge Galgay dated April 11, 1979 denying Goldman's motion to dismiss the complaint.

So ordered.