## In re EASTERN FREIGHT WAYS, INC., Bankrupt,

Sidney B. GLUCK, Trustee in Bankruptcy of Eastern Freightways, Inc., Plaintiff,

v.

SEABOARD SURETY COMPANY, Manufacturers Hanover Trust Company, Individually and as agent for other institutional lenders, International Harvester Credit Corporation, Fruehauf Corporation and the Chase Manhattan Bank, National Association, and Thomas J. Cahill, Trustee in Bankruptcy of Associated Transport, Inc., Defendants.

No. 76-B-981.

United States District Court,
S. D. New York.

Oct. 31, 1977.

Booth, Lipton & Lipton, New York City, for Sidney B. Gluck, Trustee in Bankruptcy of Eastern Freight Ways, Inc., by Edgar H. Booth, Michael R. Kleinerman, New York City, of counsel.

Tell, Cheser, Breitbart & Lefkowitz, New York City, for Seaboard Surety Co., by Solomon M. Cheser, New York City, of counsel.

Wickes, Riddell, Bloomer, Jacobi & McGuire, New York City, for Seaboard Surety Co., by James W. Harbison, Jr., Thomas R. Stritter, New York City, of counsel.

Wachtell, Lipton, Rosen & Katz, New York City, for Manufacturers Hanover Trust Co., by Theodore Gewertz, Ronald M. Neumann, New York City, of counsel.

Krause, Hirsch & Gross, New York City, for International Harvester Credit Corp., by Lewis Kruger, Christina Burks, New York City, of counsel.

Conboy, Hewitt, O'Brien & Boardman, New York City, for Fruehauf, Inc., by David J. Mountan, Jr., New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for Chase Manhattan Bank, by Russell E. Brooks, New York City, of counsel.

Anderson, Russell, Kill & Olick, P. C., New York City, for Thomas J. Cahill, Trustee in Bankruptcy of Associated Transport, Inc., by Arthur S. Olick, Poppy B. Quattlebaum, New York City, of counsel.

PALMIERI, District Judge.

This is an appeal by Seaboard Surety Company from a decision of the Bankruptcy Court.

The facts of the case can be stated briefly. Eastern Freight Ways, Inc. ("Eastern") and Associated Transport, Inc. ("Associated") were licensed common carriers of freight under the regulatory authority of the Interstate Commerce Commission. In accordance with the Commission's regulations, Eastern and Associated were authorized to act as self-insurers against cargo losses sustained by their shipping customers. Eastern gained control of Associated in 1974 and, upon authorization of the ICC, was operating and managing its affairs.

Prior to 1974, Associated had caused Seaboard to issue bonds in connection with its liability as self-insurer to third parties relating to its shipping business. After Eastern gained control of Associated, both companies began to do business with Seaboard. In September 1974, a number of agreements were executed among these companies, the precise legal effect of which remains to be ascertained. These included: 1) a "Collateral Agreement", under which Eastern and Associated agreed to provide collateral for Seaboard's exposure under any bonds issued or to be issued on behalf of Eastern or Associated; 2) a "General Agreement of Indemnity", under which Eastern and Associated agreed to indemnify and hold Seaboard harmless against liabilities incurred by Seaboard under such bonds; and 3) a letter of credit which Eastern procured from the Chase Manhattan Bank, N.A. ("Chase") from which Seaboard was authorized to draw up to $2,000,000 by sight draft and upon written certification that it had "not been released from liability under the surety bond(s) or undertaking(s) . . . executed on behalf of Eastern . . . ." During this same period Seaboard issued bonds on behalf of Eastern in connection with its liability as self-insurer to third parties for bodily injury, property damage, workmen's compensation, and the like.

Subsequent to the above arrangements, Eastern entered into various security agreements with Manufacturers Hanover Trust ("Manufacturers"), International Harvester Credit Corporation ("International Harvester"), and Fruehauf Corporation ("Fruehauf"), conveying to these companies security interests in Eastern's accounts receivable.

Eastern and Associated filed petitions for arrangement under Chapter XI of the Bankruptcy Act on April 22, 1976 and both were adjudged bankrupt on April 28, 1976. (Eastern briefly re-entered Chapter XI in June of 1976, but was again adjudged bankrupt on August 25, 1976.) Sidney B. Gluck, plaintiff below, was appointed trustee in bankruptcy of Eastern ("Eastern trustee"), and Thomas J. Cahill was appointed trustee in bankruptcy of Associated ("Associated trustee").

When Eastern filed its Chapter XI petition, approximately 20,000 unpaid cargo claims had been presented to Seaboard, many of which were asserted by claimants who also owed freight charges to Eastern. On April 28, 1976, when Eastern and Associated were originally adjudged bankrupt, Seaboard delivered its certification to Chase, took down the proceeds of the letter of credit, and began to use such proceeds to satisfy claims on the bonds which it had written for both Eastern and Associated. Seaboard also began sending letters to the shipping customers of Eastern and Associated, advising them that they could set off sums they owed for freight charges against cargo claims they asserted against those companies and that Seaboard would not be responsible for more than the difference between the two.

The present adversary proceeding was commenced on November 3, 1976, by the filing of the Eastern Trustee's complaint which pleaded three causes of action. The first sought, *inter alia*, a determination

that, because of the prior assignments of the accounts receivable, Seaboard could not invite setoffs from Eastern's customers. The second, which was dismissed by the Bankruptcy Judge and is not the subject of any appeal or cross-appeal, sought damages for Seaboard's alleged conversion of Eastern's accounts receivable. The third cause of action set forth two requests for relief: first, a declaration that the proceeds of the letter of credit are to be used by Seaboard to satisfy only claims under bonds written for Eastern, and second, a judgment that Seaboard must first exhaust the proceeds of the letter of credit before being able to take advantage of any alleged right to invite setoffs.

All of the defendants except Seaboard answered, most of them asserting cross-claims against Seaboard. Seaboard moved to dismiss the first and second causes of action of the complaint and related cross-claims for failure to state claims upon which relief could be granted; it also moved to dismiss the third cause of action and related cross-claims on the ground that the Bankruptcy Court lacked jurisdiction to grant the relief requested.

A hearing was held on December 13, 1976 and Judge Babitt of the Bankruptcy Court rendered an opinion on April 7, 1977, which in essence denied Seaboard's various motions to dismiss (except as to the second cause of action), awarded declaratory relief to the Eastern trustee to the effect that no setoff can be claimed by Seaboard until the proceeds of the letter of credit are exhausted, made permanent a temporary injunction restraining Seaboard from sending letters to Eastern's customers, and set down an evidentiary hearing on the proper allocation of the proceeds of the letter of credit. The latter hearing was stayed pending the resolution of this appeal. The Bankruptcy Judge did not reach the allegations of the first cause of action and related cross-claims, finding that his resolution of the third cause of action disposed of the case. Seaboard was granted "leave to return . . . at such time when it appears that it is a no-recourse position." An order was entered on May 27, 1977, in accordance with this opinion. Seaboard's appeal from the May 27, 1977 order followed.

### Seaboard's alleged equitable right to invite setoffs

The sole issue of substance resolved by the Bankruptcy Court and presently before this court for review concerns the effect of the proceeds of the letter of credit upon the claimed right of the surety, Seaboard, to invite setoffs by Eastern's shipping customers. All of the parties are in agreement that the analysis must commence with the landmark case of *In re Yale Express System, Inc.*, 362 F.2d 111 (2d Cir. 1966) ("*Yale Express*"), and that the essential question posed here is whether that authority is controlling on these facts.

In *Yale Express*, a Chapter X case, the United States Court of Appeals for the Second Circuit held that "the surety of an insolvent debtor is entitled to have a creditor apply a debt owing to the debtor to satisfaction of his claim", *supra* at 116. This holding represents an exception to the general rule that a surety cannot compel a solvent principal to assert a counterclaim against third-party creditors nor use the principal's counterclaim when sued by such creditors. *Meeker v. Halsey*, 87 F.2d 299, 301 (2d Cir. 1937), cited in *United States ex rel. Johnson v. Morley Const. Co.*, 98 F.2d 781, 789 (2d Cir. 1938) ("*Morley*"). Normally, then, the surety must look to the principal for exoneration.

It should be noted at this point that the issue in this case, and in *Yale Express*, is not the equitable right of bankrupt debtors and their creditors (such as Eastern and its shipping customers) to set off mutual debts, but rather the alleged right of the bankrupt's surety to solicit and take advantage of such setoffs.

In refusing to consider this case governed by the principle articulated in *Yale Express*, the Bankruptcy Judge noted that

"[t]he exception is bottomed on the fact that without the right of set off, the surety would have no recourse against

the insolvent principal and as a result the estate of the principal becomes enriched at the surety's expense."

This appears to have been Judge Learned Hand's reasoning in *Morley, supra,* a lengthy excerpt from which is quoted approvingly by Judge Friendly in the course of his opinion for the court in *Yale Express, supra,* at 115. Finding that the surety in the present case *does* have recourse—namely, the proceeds of the two-million-dollar letter of credit—and therefore that the principal's estate would not be enriched at the surety's expense, the Bankruptcy Judge concluded that it could not claim any right of setoff until such time as the proceeds of the letter of credit are exhausted.

This conclusion was eminently correct. It must not be forgotten that we are concerned here with equitable considerations, not with inflexible legal rules. Judge Babitt properly went beyond the "mere insolvency of the principal" to the "underlying rationale for the exception", namely, the impairment of the surety's right of exoneration. No injustice is done to the surety here by requiring it to seek its exoneration in the collateral apparently established for that very purpose. Moreover, its rights are protected by the Bankruptcy Judge's grant of leave to return at such time that it appears that Seaboard can make the requisite showing that its collateral is inadequate or has been properly exhausted. In light of these considerations, and given the undeveloped state of the evidence as to both the actual and the proper disposition of the proceeds of the letter of credit by Seaboard, it would be inappropriate for this court to overturn the Bankruptcy Judge's decision.

It follows from what has just been said that the Bankruptcy Court's orders 1) awarding the Eastern trustee declaratory relief to the effect that no setoff can be claimed by Seaboard until the proceeds of the letter of credit have been exhausted, 2) denying Seaboard's motion for an affirmative declaration sustaining its contentions regarding setoff, 3) ordering Seaboard to render an accounting to the Eastern trustee of the nature, amount and disposition of claims filed with it by claimants arising from contracts of carriage of freight between such claimants and Eastern, and 4) making permanent its temporary restraining order enjoining Seaboard from interfering with the administration of the Eastern estate and with the assets and property of such estate (in particular, the accounts receivable), are correct and are hereby affirmed.

*Jurisdiction over the proceeds of the letter of credit*

Seaboard appeals from the denial of its motion to dismiss the third cause of action in the complaint and related cross-claims on the ground that the Bankruptcy Court lacks jurisdiction over the proceeds of the letter of credit.

There has been no little confusion among the parties as to the precise jurisdictional issue raised by this appeal. This is due in part to the inclusion of two apparently distinct requests for relief in the plaintiff's "third cause of action": one with respect to Seaboard's alleged right of setoff and one with respect to the proper disposition of the proceeds of the letter of credit. Seaboard's motion to dismiss the "third cause of action", without specifying the portion of that cause of action to which it has in fact objected, and its appeal from the Bankruptcy Judge's denial of that motion, created the impression among some of the parties to these proceedings that it was contesting the Bankruptcy Court's jurisdiction to decide the setoff question, discussed in the preceding section. Additionally, the decision below contained a number of ambiguities as to the basis for the denial of Seaboard's motion and the precise scope of the assumption of jurisdiction.

Happily, much of this confusion can now be dispelled. Seaboard is not objecting to the Bankruptcy Court's jurisdiction to determine whether or not it had a right to take advantage of the setoffs. As stated in its brief, "Seaboard's complaint on appeal is not *that* the judge below addressed this *Yale Express* question, but rather *how* that question was resolved." Nor is Seaboard

objecting on jurisdictional grounds to the Bankruptcy Judge's consideration of the proceeds of the letter of credit in determining the merits of the setoff issue. Rather, Seaboard's jurisdictional objection is limited to that part of the third cause of action which seeks an adjudication of the proper use and disposition of the letter of credit, namely, a declaration that "the proceeds of the $2,000,000 letter of credit . . . are to be used by Seaboard to satisfy only claims under bonds written by Seaboard for *Eastern*." Complaint at 13. (emphasis added). The cross-claims which Seaboard moved to dismiss on jurisdictional grounds, and from the denial of which motion it now appeals, also sought determinations as to the proper disposition of the proceeds of the letter of credit.

A brief summary of what is *not* in dispute among the parties as to this jurisdictional question will help simplify the following analysis. Firstly, it is agreed that the Bankruptcy Court had jurisdiction over the setoff question by virtue of its constructive possession of Eastern's accounts receivable. Secondly, it is agreed that once the Bankruptcy Court has jurisdiction, it may determine all of the rights of the parties connected with the underlying transaction. Thirdly, no one contends that the court had possession, actual or constructive, of the proceeds of the letter of credit, upon which to base its jurisdiction with respect to their proper use and application. Rather, as an adverse claimant, Seaboard appears to have a "substantial and bona fide" claim to such proceeds.

■ A Bankruptcy Court's summary jurisdiction may be based upon the defendant's consent, Bankruptcy Act §§ 2a(7), 23(b), 11 U.S.C. §§ 11(a)(7), 46(b) (1970), or the court's possession, actual or constructive, of the subject matter of the controversy. 2 Collier on Bankruptcy ¶ 23.05[1] (14th ed. 1976). It is the latter basis upon which the Bankruptcy Court's jurisdiction over the setoff issue was based; and it is agreed that it cannot operate here to invest that court with jurisdiction over the proceeds of the letter of credit.

Although there are assertions in the briefs that Seaboard expressly consented to jurisdiction over the proceeds by its pre-complaint statements before the Bankruptcy Court or its filing of a proof of claim in this action, these were not passed upon by the Bankruptcy Judge in resolving the jurisdictional issue, and this court is reluctant to consider them here for the first time. The primary focus which the jurisdictional issue has taken on this appeal, rather, concerns the question of whether the setoff and proceeds issues, or the transactions from which they arise, are sufficiently related, so that the conceded jurisdiction over the former extends to the latter. The proper test to be applied in determining the jurisdictional sufficiency of their relatedness is a matter of considerable dispute, depending in part upon the basis for jurisdiction over the setoffs.

Much has been made of Seaboard's alleged "consent" to jurisdiction over the setoff issue, indicated, it is argued, by Seaboard's request for "affirmative relief" in its first responsive pleading. Seaboard, on the contrary, urges that it had "no alternative but to proceed on the merits of its asserted right to setoffs", and that failure to do so in light of the court's jurisdiction— which it recognized—would have resulted in a forfeiture of its "constitutional right to defend itself."

■ It seems clear that Seaboard's recognition of jurisdiction over the setoffs was and is immaterial: the court clearly had jurisdiction by virtue of its constructive possession of the accounts receivable, and Seaboard had no choice but to acknowledge this. This is not a case where the defendant's actions in "proceeding on the merits" invest the Bankruptcy Court with a jurisdiction otherwise lacking. Seaboard's failure to object on jurisdictional grounds to claims seeking relief with respect to the setoff issue was therefore of no jurisdictional significance; jurisdiction would have been present even if they had so objected. Indeed, it makes little sense here to speak of "consent", where there existed no prior freedom from jurisdiction which Seaboard could knowingly have waived. Thus, juris-

diction over the proceeds questions cannot properly be predicated upon an alleged consent by Seaboard to jurisdiction over the related issue of setoffs.

As noted above, the opinion of the Bankruptcy Court could have been clearer on the issue of jurisdiction. In its discussion of Seaboard's motion to dismiss, it found the setoff issue "inextricably intertwined with the *existence* of the proceeds of the letter of credit." (emphasis added). This and other language in the opinion suggest that, at least at that point, the judge was merely confirming his established jurisdiction to consider the effect of the existence of the proceeds of the letter of credit on Seaboard's alleged right of setoff. He did not, however, unequivocally discuss or resolve his jurisdiction over the proceeds themselves. Nonetheless, his decision to set down an evidentiary hearing "on the proper allocation between the trustees of the letter of credit, and the reach of the contract between Seaboard and both Eastern and Associated," suggests assumption of jurisdiction to determine the claims with respect to the proper use and application of the proceeds. It is this determination which Seaboard strenuously contends lies beyond the competence of his court.

Fortunately, it is not necessary to resolve the arguments asserting and denying the existence of an independent basis for jurisdiction to sustain the Bankruptcy Judge's decision to determine the proper use and application of the proceeds of the letter of credit. This is so because, in light of my agreement with the substantive decision, that determination is a necessary prerequisite to the final resolution of the rights of the parties with respect to the setoffs, over which the court clearly has jurisdiction. ■ The trustee's right to prevent Seaboard from inviting setoffs and thereby interfering with assets in his constructive possession (the accounts receivable) arises, in part, from the availability to Seaboard of proceeds of a letter of credit. "Availability" must not be understood in a physical

sense, but rather in a legal one: the funds which impede Seaboard's alleged right to setoffs are only "available" to it if, given the proper use of such funds, there remains a reservoir from which Seaboard can continue to draw in paying claims under its bonds. Whether the actual money has been exhausted is irrelevant; what is determinative is whether those expenditures permitted by the terms of the contracts to which the parties had bound themselves—and only those expenditures—have been of sufficient magnitude to exhaust the $2,000,000 drawn down from the issuer of the letter of credit. What Seaboard has actually spent is thus not the question; the question is what Seaboard was entitled to have spent, given a proper interpretation of the contractual terms and associated instruments, and whether such authorized expenditures have exhausted the proceeds. This latter question, upon the resolution of which depend the rights of the parties as to the setoffs, requires an examination and interpretation of the parties' rights in and to these proceeds, and in particular, a determination of whether such proceeds must be used solely to satisfy claims under bonds written by Seaboard for Eastern, as alleged in the complaint.

It appears, then, that the Bankruptcy Judge properly assumed jurisdiction to decide these questions upon the scheduled evidentiary hearing. Whether, after such hearing, the Bankruptcy Court would have jurisdiction to compel any particular use of the physical proceeds or issue any other orders which cannot directly be predicated on his jurisdiction over the setoff issue is another question. Because it is not yet clear just what additional matters the Bankruptcy Judge intends to reach in this case, and because some of the parties, including the Eastern trustee, have taken positions in their briefs apparently disclaiming any assertion of jurisdiction over the proceeds themselves,[1] these questions must abide the further course of this litigation.

---

1. The Eastern trustee states that it is not alleging "jurisdiction over the proceeds of the letter of credit and [asking the court to] cause their use or disposition." International Harvester asserts that "it is not necessary that Seaboard be commanded to make any particular disposition of the Letter of Credit proceeds".

*Additional matters*

Seaboard has appealed from the denial of its motion to dismiss the plaintiff's first cause of action and related cross-claims for failure to state claims upon which relief may be granted. Finding the third cause of action dispositive of this case, the Bankruptcy Judge did not reach the merits of these claims. He did, however, sustain them as a matter of law.

The claims at issue seek to prevent or restrict Seaboard's alleged right of setoff on grounds independent of Seaboard's possession of the letter of credit proceeds, and therefore will assume a central importance in the case if and when Seaboard demonstrates that it has exhausted those proceeds. They present questions as to the effect of the prior assignments of Eastern's accounts receivable to a number of the co-defendants upon Seaboard's claimed right of setoff, the possible waiver of setoffs by shipping customers through prior payment of freight bills, and the restriction of the right of setoff to debts arising out of single transactions. In addition to raising complex points of law, these questions pose substantial issues of fact which require resolution in order to permit justice to be done among the parties.

█ It is axiomatic that a claim should not be dismissed as legally insufficient unless it appears beyond doubt that no set of facts can be proven in support of that claim to warrant granting the relief sought. *See, e. g., Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); 2A Moore's *Federal Practice* ¶ 12.08 at 2274 (2d ed. 1975). The Bankruptcy Court evidently did not believe that this exacting standard had been satisfied, nor have I been convinced otherwise on the record before me.

█ By its motion for reconsideration of September 20, 1977, Seaboard seeks to draw this Court into a controversy which has already consumed an inordinate amount of judges' and litigants' time. This motion concerns Seaboard's designation of two letters as Item 23 of the record on appeal: a letter dated May 10, 1977 from Thomas F. Starr of Seaboard to Solomon M. Cheser, Esq., of Tell, Cheser, Breitbart & Lefkowitz, counsel to Seaboard, indicating that the proceeds of the letter of credit had been exhausted prior to the Bankruptcy Judge's opinion of April 7, 1977, and a further letter from Mr. Cheser to the Bankruptcy Court transmitting a copy of the Starr letter. Manufacturers and International Harvester moved by order to show cause before the Honorable Charles L. Brieant, District Judge, to have this item stricken from the record. After seeking and obtaining a report from Judge Babitt concerning his receipt and consideration of these letters, Judge Brieant granted the motion.

These letters go to matters which can have no relevance to this case prior to the scheduled evidentiary hearing. Additionally, the unsubstantiated allegations of fact contained therein have not been the subject of any adversary proceeding below and can have no bearing upon the resolution of this appeal. Accordingly, the motion for reconsideration is denied.

█ Only two further contentions of appellant Seaboard deserve brief mention here. Firstly, it has been argued that, since the Eastern trustee "stands in the shoes of the bankrupt", he should be estopped by the Collateral and Indemnity Agreements from asserting that the letter of credit proceeds may only be used to satisfy claims under bonds written for Eastern. Seaboard urges that these agreements make it plain that the letter of credit proceeds were security for both Eastern and Associated bonds. The estoppel of the Eastern trustees, it is argued, would have the consequence of putting the dispute concerning the disposition of the proceeds outside the jurisdiction of the Bankruptcy Court. The argument suffers from the defect of assuming the results of the evidentiary hearing which is yet to be held, and the conclusions the Bankruptcy

Judge will have to reach as to the legal effect of these extrinsic agreements upon the apparently unambiguous terms of the letter of credit. The merits of the estoppel claim, as well as the jurisdictional consequences of its resolution one way or the other, are matters which will become ripe for decision after the proposed evidentiary hearing.

Secondly, Seaboard contends that the Bankruptcy Judge was "led into error" by a "frankly admitted bias" and argues that his decision was influenced by improper "speculations and assumptions". In view of my agreement on the merits with the Bankruptcy Court's decision as to which bias is alleged, there is no need to consider these assertions.

The order of the Bankruptcy Court of May 27, 1977 is affirmed.